UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JACOB MUZUMALA,

                Plaintiff,

-against-

CITY OF NEW YORK; DANIEL W. TEITZ;
CHERYL CONTENTO; BRONXWORKS;
PROJECT RENEWAL; GAIL CRICK; EBONY
WEBB; TAMARA GAYLE; SUSAN BRADY;
JANE DOE; JOHN DOE,

                Defendants.

22-CV-8423 (LTS)

ORDER OF DISMISSAL

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff, who is proceeding *pro se* and *in forma pauperis* (IFP), filed this action alleging that Defendants violated his rights. By order dated February 21, 2023, the Court directed Plaintiff to file a second amended complaint to address deficiencies in his amended complaint. Plaintiff filed a second amended complaint on April 24, 2023, and the Court has reviewed it. The action is dismissed for the reasons set forth below.

## BACKGROUND

    The Court assumes familiarity with its February 21, 2023 order to amend, which details the allegations in Plaintiff's amended complaint. The Court here will briefly summarize those allegations. Plaintiff, who is of African descent, came to the United States in 2006, and at some point thereafter applied to become a legal permanent resident. Between 2019 and October 2021, Plaintiff lived in New Paltz, New York; and New Orleans, Louisiana, to pursue educational opportunities. For reasons unknown to Plaintiff, federal agents and their "proxies," including neighbors and other private individuals, stalked and harassed Plaintiff, invaded his privacy, and actively sought his deportation. Although Plaintiff was granted permanent residency status on

May 21, 2021, federal agents and others continued to follow him and seek to have him deported. After Plaintiff returned to New York City in November 2021, he entered the homeless shelter system, where his rights to privacy and due process were violated. Plaintiff was subjected to substandard living conditions, housed with mentally ill and addicted individuals who used drugs openly, both before and after he requested transfers to different shelters, and retaliated against for complaining about these conditions.[1] (ECF 11.)

In the February 21, 2023 order, the Court directed Plaintiff to file a second amended complaint to address the following deficiencies in the amended complaint: (1) Plaintiff had not provided facts showing that the private defendants had acted under color of state law; (2) the Department of Homeless Services (DHS) was not a suable entity, and there were no allegations supporting a municipal liability claim against the City of New York; (3) Plaintiff failed to show how any individual defendant was personally involved in violating his federally protected rights; and (4) because the Constitution does not protect the right to be in a shelter of a particular type or quality, his allegations regarding shelter conditions did not give rise to viable Section 1983 claims. The Court deferred a decision on whether to exercise supplemental jurisdiction over any state law claims Plaintiff sought to assert.[2] (ECF 12.)

---

[1] Named as defendants in the amended complaint, filed on January 23, 2023, are: (1) the City of New York; (2) the New York City Department of Homeless Services (DHS); (3) Pamoja House; (4) Pamoja House Director Gail Crick; (5) BronxWorks; (6) Project Renewal; (7) Daniel W. Teitz, Commissioner, New York State Office of Temporary and Disability Assistance; (8) Gary P. Jenkins, Commissioner, New York City Human Resources Administration; (9) Ebony Webb, Program Director, Help107; (10) Tamara Gayle, Program Director, JAMS; (11) Boulevard Men's Residence (BRC) Doctor Susan Brady; (12) Jane Doe, JAMS Resident Assistant; (13) John Doe, DHS peace officer at JAMS. (ECF 11.)

[2] In the order to amend, the Court directed Plaintiff not to raise claims about any federal actors or their "proxies," because he already had pending cases against those individuals. *See Muzumala v. Mayorkas,* ECF 1:22-CV-3789, 15 (JGK) (S.D.N.Y. filed May 9, 2022); *Muzumala v. Unknown Federal Agents,* ECF 1:22-CV-7851, 2 (LTS) (S.D.N.Y. Aug. 28, 2023) (dismissing complaint under 28 U.S.C. § 1915(e)(2)(B)(i)), *reconsideration pending.*

In the second amended complaint, which with attachments is 262 pages long, Plaintiff reiterates that shelter staff and social workers "were aware of and even influenced by the unknown federal agent(s) and their proxies (Plaintiff's previous neighbors from New Paltz, NY)." (ECF 13, ¶¶ 137, 149.) Plaintiff against asserts claims regarding the poor shelter conditions to which he was subjected, but he asserts for the first time that his exposure to secondhand smoke, including crack cocaine, K2, and tobacco, and being housed with substance abusers and the mentally ill, violated his rights under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and state regulations, and was done in retaliation for complaining about poor shelter conditions.[3] (*Id.* ¶¶ 1, 103, 126, 153, 179.) According to Plaintiff, the City of New York, Teitz, and Contento are liable for what occurred because they are ultimately responsible for "overseeing" the shelter system; that the shelters should be deemed state actors because they "work[] in partnership with" the City of New York; that the shelter supervisors were ultimately responsible for what took place in the shelters they managed; that Dr. Brady misdiagnosed him with schizophrenia;[4] that Jane Doe at JAMS "confiscated [his] property and discarded it without Plaintiff's knowledge or consent, and without making any reasonable efforts to return it"; and that John Doe, a JAMS "peace officer":

> deprived Plaintiff of due process when Defendant engaged in what appeared to be a discriminatory practice when he insisted that Plaintiff needed to be video

---

[3] The named defendants in the second amended complaint are: (1) the City of New York; (2) OTDA Commissioner Teitz; Cheryl Contento, Deputy Commissioner of the Division of Shelter Oversight and Compliance; (3) BronxWorks; (4) Project Renewal; (5) JAMS Program Director Gayle; (6) Help107 Program Director Webb; (7) Pamoja House Director Crick; (8) Dr. Brady; and (9) JAMS employees Jane Doe and John Doe. (ECF 13.)

[4] Plaintiff asserts that he was "shocked" by Dr. Brady's diagnosis of schizophrenia, because he has "no history of mental illness," that his claims of being "tracked and followed [by federal agents and their proxies are] true," but that he is considered disabled under the ADA because of the alleged misdiagnosis. (*Id.* ¶¶ 113-114, 137.)

>recorded on the body camera, even when it appeared there was no need for the use
>of the body camera, in order for the peace officer to fill out an incident report.

(ECF 12 ¶¶ 30-39, 108.)

Plaintiff seeks declaratory and injunctive relief, and money damages. (*Id.* ¶ 2.) Included in the attachments to the second amended complaint are Google reviews of the shelters, a redacted copy of Brady's psychiatric assessment of Plaintiff; photographs that Plaintiff claims he took inside the shelters showing people smoking, piles of tobacco and marijuana cigarette butts, small ziplock bags; documents relating to Immigration and Customs Enforcement (ICE); and reasonable accommodation request forms. (*Id.* 13-1 — 13-6.)

## DISCUSSION

### A.   Previously asserted claims under Section 1983

The second amended complaint suffers from the same deficiencies as the amended complaint with respect to Plaintiff's claims arising under Section 1983. (ECF 12.) To summarize the reasoning set forth in the February 21, 2023 order to amend, Plaintiff has not shown that: (1) the private defendants acted under color of state law; (2) his constitutional rights were violated, or that any state actor was personally involved in violating his constitutional rights; and (3) a municipal policy, custom, or practice resulted in the violation of his constitutional rights. In short, while the Court recognizes the difficulty of Plaintiff's circumstances, the Constitution does not impose a duty of care where, as here, Plaintiff was not in custody against his will and was free to leave any of the shelters. *See, e.g., Joseph v. Row Hotel*, No. 21-CV-1691, 2021 WL 2400948, at *4 (E.D.N.Y. June 11, 2021) (dismissing complaint "because Plaintiff's allegations related to the conditions at various shelters, including that the shelters were loud, dirty, in disrepair, or otherwise not to his liking, do not rise to the level of constitutional violations"); *Brown v. City of New York*, No. 17-CV-5836 (LDH) (ST), 2018 WL 1770557, at *4 (E.D.N.Y.

Apr. 12, 2018) (dismissing Section 1983 claim against shelter employees who did not owe the plaintiff a duty of care because, *inter alia*, she was "free to leave the shelter"); *Carter v. City of New York*, No. 13-CV-1839 (RA), 2014 WL 4953641, at *3 (S.D.N.Y. Sept. 30, 2014) (finding that the plaintiff's Section 1983 claim that his living quarters in shelter were infested with insects and rodents did not implicate the Constitution because, *inter alia*, the plaintiff was free to leave the shelter). Accordingly, Plaintiff's allegations do not raise viable claims under Section 1983, and those claims are therefore dismissed for failure to state a claim on which relief may be granted.

**B.      New claims under the ADA and the Rehabilitation Act**

Plaintiff alleges that defendants discriminated and retaliated against him in violation of the ADA and the Rehabilitation Act. Title III of the ADA governs places of public accommodations, and guarantees that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Private shelters qualify as public accommodations under Title III. *See* 42 U.S.C. § 12181(7)(K) (including homeless shelters and "other social service center establishment[s]" as public accommodations).[5]

Under the Rehabilitation Act, "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the

---

[5] Money damages are not available under Title III, *Powell v. Nat'l Bd. of Medical Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004), *op. corrected*, 511 F.3d 238 (2d Cir. 2004), though a plaintiff could arguably seek injunctive relief, *see Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94 (2d Cir. 2012).

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794(a). Because the standards under the ADA and the Rehabilitation Act "are generally the same and the subtle distinctions between the statutes are not implicated in this case, '[the Court will] treat claims under the two statutes identically'" for the purposes of this order.[6] *Wright v. N.Y. State Dep't of Corrs.*, 831 F.3d 64, 72 (2d Cir. 2016) (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)). The Second Circuit has held that the ADA and Rehabilitation Act do not require states to provide new services to the disabled, and only mandates "that a particular service provided to some not be denied to disabled people." *Disability Rights New York v. New York State*, No. 17-CV-6965, 2019 WL 2497907, at *22 (E.D.N.Y. June 14, 2019) (citing *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999)).

To state a disability discrimination claim, a plaintiff must allege: (1) that he is disabled within the meaning of the statute; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the statute. *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008). A plaintiff must also allege that the "exclusion or discrimination was due to [the plaintiff's] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)).

With respect to the third element, "a plaintiff can base a disability discrimination claim on any of 'three available theories: (1) intentional discrimination (disparate treatment);

---

[6] Plaintiff does not allege that the shelters receive federal funding, as would be required to state a claim under the Rehabilitation Act. *See* 29 U.S.C. § 794(a); *Rothschild v. Grottenthaler*, 907 F.2d 286, 289-90 (2d Cir. 1990). The Court will assume without deciding that the Rehabilitation Act applies to the shelters.

6

(2) disparate impact; and (3) failure to make a reasonable accommodation.'" *Brief v. Albert Einstein Coll. of Med.*, 423 Fed. Appx. 88, 90 (2d Cir. 2011) (quoting *Fulton*, 591 F.3d at 43). To bring a reasonable accommodation claim, a plaintiff must show that: (1) he suffers from a disability (2) known to the defendant, for which (3) a reasonable accommodation is necessary for the plaintiff's enjoyment of the facility, and (4) the defendant refused the accommodation." *Lopez v. New York City Dep't of Homeless Servs.*, No. 17-CV-3014, 2019 WL 3531955, at *4 (S.D.N.Y. Aug. 2, 2019), *report and recommendation adopted*, No. 17-CV-3014, 2019 WL 4593611 (S.D.N.Y. Sept. 23, 2019).

To state a claim for retaliation under the ADA and the Rehabilitation Act, a plaintiff must allege that (1) he was engaged in an activity protected under the statutes, (2) the defendants were aware of this activity, (3) the defendants took adverse action against the plaintiff, and (4) a causal connection exists between the protected activity and the adverse action. *See* 42 U.S.C. § 12203 (prohibiting retaliation against an individual who has "participated in any manner in an investigation, proceeding, or hearing" under the ADA); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (defining "protected activity" as "action taken to protest or oppose statutorily prohibited discrimination").

Even if the Court assumes that Plaintiff is disabled within the meaning of the ADA and Rehabilitation Act,[7] the facts alleged do not give rise to an inference that any defendant discriminated or retaliated against Plaintiff, either because of a disability or because he engaged in activity protected under the ADA and the Rehabilitation Act, or denied him reasonable accommodation. Plaintiff asserts that he was housed in various facilities within the city's shelter

---

[7] The Court notes Plaintiff's assertion that he is "considered disabled" because of Dr. Brady's alleged misdiagnosis of schizophrenia. (ECF 13 ¶113.)

system, where: (1) his right to privacy was violated; (2) his property was stolen; (3) he was exposed to secondhand smoke and other unhealthy living conditions; and (4) he was housed with active substance abusers and the mentally ill. Plaintiff was transferred between shelters on numerous occasions, sometimes in response to his request to be moved, and other times not. While Plaintiff's allegations portray the less-than-optimal conditions in the shelter system, they do not suggest that any defendant was motivated by, or acted pursuant to, discriminatory or retaliatory animus, or that he requested and was denied a reasonable accommodation. In other words, there has been no showing that Plaintiff was deprived of access to services offered to other residents *because of* his disability or perceived disability. For these reasons, Plaintiff's claims under the ADA and the Rehabilitation Act are dismissed for failure to state a claim on which relief may be granted.

C.     **State law claims**

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**FURTHER LEAVE TO AMEND DENIED**

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's second amended complaint cannot be cured with further amendment, the Court declines to grant Plaintiff another opportunity to amend.

**CONCLUSION**

Plaintiff's second amended complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment in this case.

SO ORDERED.

Dated:   October 10, 2023
         New York, New York

                                          /s/ Laura Taylor Swain
                                          LAURA TAYLOR SWAIN
                                          Chief United States District Judge